# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| THOMAS EUGENE GREEN, | § | |
| No.  1123004, | § | |
|      Petitioner, | § | |
| | § | |
| v. | § | NO. 3:05-CV-1682-P |
| | § | |
| DOUG DRETKE, Director, | § | |
| Texas Department of Criminal Justice, | § | |
| Correctional Institutions Division, | § | |
|      Respondent. | § | |

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

Pursuant to the provisions of 28 U.S.C. § 636(b) and an order of the District Court in implementation thereof, the subject cause has previously been referred to the United States Magistrate Judge.  The findings, conclusions, and recommendations of the Magistrate Judge, as evidenced by his signature thereto, are as follows:

FINDINGS AND CONCLUSIONS:

Type of Case:  This is a petition for habeas corpus relief filed by a state inmate pursuant to 28 U.S.C. § 2254.

Parties:  Petitioner Thomas Eugene Green ("Green" or "Petitioner") is confined at the Ferguson Unit of the Texas Department of Criminal Justice, Correctional Institutions Division ("TDCJ-CID") at Midway, Texas.  Respondent is the Director of the TDCJ-CID.

Statement of the Case:  Green pled not guilty in cause number F02-00808-VK to one count of aggravated robbery enhanced by a prior felony conviction.  After a jury trial, Petitioner was found guilty.  Before sentencing, Petitioner plead true to the enhancement paragraph in the

1

indictment.  The jury sentenced Green to thirty-eight years imprisonment and a 7500 dollar fine.

Petitioner appealed his sentence to the Fifth District Court of Appeals and on August 18, 2003, the court affirmed the trial court's judgment.  *Green v.  State*, No.  05-02-01379-CR (Tex. App.-Dallas August 18, 2003).  Green's petition for discretionary review ("PDR") was refused by the Texas Court of Criminal Appeals on January 28, 2004.

On October 22, 2004, pursuant to Texas Code of Criminal Procedure article 11.07, Green filed a habeas application challenging his conviction.  *Ex parte Green*, Appl.  No.  61,313-01 at 2.  The application was denied by the Texas Court of Criminal Appeals without written order on February 16, 2005.  *Ex parte Green*, Appl.  No.  61,313-01 at cover.

Petitioner filed the instant petition on August 22, 2005.  On October 25, 2005, Respondent filed his answer contending that Petitioner's legal insufficiency of the evidence claim is both unexhausted and procedurally defaulted and that his ineffective assistance of counsel claim is without merit.

Findings and Conclusions:  Review of Green's claims is governed by the provisions of the Antiterrorism and Effective Death Penalty Act ("AEDPA") because he filed his § 2254 petition after the effective date of the AEDPA.  The AEDPA, in pertinent part, provides that a federal court cannot grant relief under § 2254 of the act unless the adjudication of a state prisoner's claim in the state court system, "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding."  28 U.S.C § 2254(d)(1)-(2) (1996).  Findings of fact made by a state court are

presumed to be correct absent clear and convincing evidence rebutting the presumption.

§ 2254(e)(1).  Where a petitioner challenges a state court's application of federal law under

§ 2254(d)(1), the petitioner must also show that the state court's decision was not only

erroneous, but objectively unreasonable.  *See Yarborough v.  Gentry*, 540 U.S. 1, 5, 124 S.  Ct.

1, 4 (2003) (citing *Williams v.  Taylor*, 529 U.S. 362, 409, 120 S.  Ct.  1495, 1521 (2000)); *see

also Morrow v.  Dretke*, 367 F.3d 309, 313 (5th Cir.  2004), *cert.  denied*, 125 S. Ct. 421 (2004)

("[F]ederal habeas relief is only merited where the state court decision is both incorrect and

objectively unreasonable.").

Where state habeas relief is denied without an opinion, the AEDPA inquiry is not altered.

*Schaetzle v. Cockrell*, 343 F.3d 440, 443 (5th Cir. 2003), *cert. denied*, 540 U.S. 1154, 124 S. Ct.

1156 (2004).  In such a situation, a federal court: "(1) assumes that the state court applied the

proper 'clearly established Federal law' and then (2) determines whether its decision was

contrary to or an objectively unreasonable application of that law."  *Id*.

**Insufficiency of the Evidence**

Respondent argues that Petitioner has not exhausted his state remedies regarding his

insufficiency of the evidence claim.  Respondent does not assert that Petitioner failed to raise this

federal constitutional claim in the state courts; instead, Respondent asserts that Green has used

three different factual bases to support his insufficiency of the evidence claims: (1) in his direct

appeal Petitioner argued that the evidence was insufficient for the jury to find him guilty of the

offense because the State did not prove beyond a reasonable doubt that Green used a razor

during the robbery, (2) in his state habeas application Green argued that the evidence was

insufficient for the jury to find him guilty of the offense because the victim could not identify

him in court and therefore the state failed to prove identity beyond a reasonable doubt and, (3) in

his federal petition Green reasserts his argument regarding the victim's lack of identification and

also argues that the state failed to prove that Petitioner used a deadly weapon.

Under § 2254(b)(1)(A), an application for a writ of habeas corpus shall not be granted

unless it appears that the applicant has "exhausted the remedies available in the courts of the

State."  A petitioner satisfies the exhaustion requirement when "the substance of the federal

habeas claim has been fairly presented to the highest state court."  *Soffar v. Dretke*, 368 F.3d

441, 465 (5th Cir. 2004) (citing *Duncan v. Henry*, 513 U.S. 364, 366, 115 S. Ct. 887, 888 (1995)

and *Fisher v. Texas*, 169 F.3d 295, 302 (5th Cir. 1999)).  A claim is "fairly presented" to the

highest state court if there has been, for example, "(1) reliance on pertinent federal cases

employing relevant constitutional analysis, (2) assertion of the claim in terms sufficiently

particular as to 'call to mind' a specific right protected by the Constitution, or (3) allegations of a

pattern of facts that is well within the mainstream of constitutional litigation."  *Soffar*, 368 F.3d

at 465 (citations omitted).

Petitioner's appellate brief filed in the Fifth District Court of Appeals contained two

arguments: (1) the evidence was legally insufficient to support Petitioner's conviction and (2) the

evidence was factually insufficient to support Petitioner's conviction.[1]  Petitioner argued that

there was insufficient evidence to support the verdict because the State did not prove beyond a

reasonable doubt that he used or exhibited a razor during the course of the robbery and cited

federal law, specifically *Jackson v. Virginia*, 443 U.S. 307, 99 S. Ct. 2781 (1979), in support of

his claim.

---

[1] Factual insufficiency of the evidence is solely a state law claim.  *See Woods v. Cockrell*, 307 F.3d 353, 357-58 (5th Cir. 2002).

The elements of robbery are set out in Texas Penal Code sections 29.02 and 31.03.  In order to constitute aggravated robbery, the State must prove that: (1) the assailant caused serious bodily injury to another, or (2) that a deadly weapon was used or exhibited, or (3) the assailant caused serious bodily injury to another person *or* threatened or placed another person in fear of imminent bodily injury or death, *if* the person is 65 years of age or older.  Tex.  Penal Code Ann. § 29.03 (Vernon 2001) (emphasis added).

As reflected in Petitioner's direct appeal brief as well as in his *pro se* petition for discretionary review, the sole issue with respect to sufficiency of the evidence was whether the box cutter or razor which Green cut the victim's throat was a deadly weapon, the element establishing the requisite circumstance which promoted the robbery to an aggravated offense.

The issue regarding Green's identity as the robber was first raised in his subsequently filed article 11.07 application–a separate and distinct basis attacking the sufficiency of the evidence to support his conviction.  Therefore, this independent factual basis for relief–notwithstanding the same legal basis–was not "fairly presented" in the context of his direct appeal.[2]

Respondent argues that the identity issue is procedurally barred, noting that the Texas Court of Criminal Appeals has repeatedly held that sufficiency of the evidence claims are not cognizable in collateral state proceedings.  He also cites the Court of Criminal Appeals' decision in *Ex parte Grigsby*, 137 S.W.3d 673 (Tex.  Crim.  App.  2004), for the proposition that a denial

---

[2]  Green's insufficiency of the evidence claim predicated on his argument that the box cutter (razor) was not a deadly weapon was exhausted in the context of his direct appeal.  *See*, *e.g.*, *Richardson v.  Procunier*, 762 F.2d 429, 430-31 (5th Cir.  1985); *Myers v.  Collins*, 919 F.2d 1074, 1076 (5th Cir.  1990).

without written order constitutes a finding that a sufficiency of the evidence claim is not cognizable in a post-conviction proceeding.

Application of a state's procedural bar is a matter of comity and a federal habeas court will not consider a claim on which the state court expressly relied on an independent and adequate state ground. *See Coleman v. Thompson*, 501 U.S. 722, 735, 111 S. Ct. 2546, 2557 (1991). However, "if the decision of the last state court...did not clearly and expressly rely on an independent and adequate state ground, a federal court may address the petition." *Id.* The disposition of Green's article 11.07 application by the Court of Criminal Appeals clearly does not comport with the requirements of *Coleman*. Where an identical disposition of an article 11.07 application was made in *Kittleson v. Dretke*, 426 F.3d 306, 315-16 (5th Cir. 2005), the Court held that procedural default did not apply.[3] Therefore, Respondent's motion to dismiss the petition for failure to exhaust should be denied.

In reviewing the sufficiency of the evidence, a court refers to the substantive elements of the criminal offense as defined by state law. *Weeks v. Scott*, 55 F.3d 1059, 1062 (5th Cir. 1995). The court examines the evidence in the light most favorable to the prosecution to determine if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789. This standard takes into account a jury's duty to "resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Id.*

---

[3] Reliance on *Ex parte Grigsby* is rendered all the more problematic since Green's article 11.07 application also raised an ineffective assistance of counsel claim which has never been held by the Court of Criminal Appeals to be procedurally barred in an initial article 11.07 application.

6

Petitioner was convicted of the offense of aggravated robbery.  Under Texas law, a person commits a robbery when he: (1) unlawfully appropriates property, (2) with the intent to deprive the owner of property, and, during the course of this act, (3) intentionally, knowingly, or recklessly causes bodily injury to another or intentionally or knowingly threatens or places another in fear of imminent bodily injury or death.  Tex. Pen. Code Ann. §§ 29.02. Circumstances which render robbery an aggravated offense are set out in Texas Penal Code Annotated § 29.03.[4]

The evidence presented by the prosecution clearly established that the victim was robbed of money which belonged to him.  *See* Tex. Pen. Code Ann. §§ 29.02, 29.03, 31.03. Specifically, the victim, an 80 year old man, testified that on November 10, 2001, after letting a man into his house to use his phone, the man attacked him with a box cutter or an X-ACTO knife, twice slashed his throat, and then took his wallet, which contained approximately three thousand dollars.  (Rep.'s R.  v.  3 at 11, 19, 22-23, 30-33, 35.)  The victim's wound later required twelve stitches to close.  (Rep.'s R.  v.  3 at 48.)  A police detective testified that a box cutter or X-ACTO knife could be used as a deadly weapon and the state introduced, for demonstrative purposes, an example of a box cutter.  (Rep.'s R.  v.  3 at 109-10.)  This testimony, if deemed credible by the jury, established the commission of a robbery under aggravating circumstances, namely, that the robbery was committed against a person over the age of 65 years old and that the assailant used a deadly weapon.[5]  *See* Tex. Pen. Code Ann. §§

---

[4] *See*, page 5, *supra*.

[5] The indictment plead two different methods of committing the offense in two separate paragraphs but the jury came back with a general verdict of guilty as charged in the indictment. (Clerk's R.  v.  1 at 2, Rep.'s R.  v.  4 at 96.)  Under state law, such a verdict was appropriate because the State needed only to prove one of the aggravating factors beyond a reasonable doubt, not both.  *See Kitchens v. State,* 823 S.W.2d 256, 258 (Tex. Crim. App. 1991) (holding that a

29.02, 29.03, 31.03; *see also Denham v. State*, 574 S.W.2d 129, 131 (Tex. Crim. App. 1978)

(holding that the victim of a stabbing is capable of testifying that the knife was a deadly weapon

capable of causing death or serious bodily injury); *Brown v. State*, 716 S.W.2d 939, 946 (Tex.

Crim. App. 1986) (noting that the State can prove that a knife is a deadly weapon by introducing

evidence of the knife's "size, shape and sharpness, the manner of its use, or intended use and its

capacity to produce death or serious bodily injury").

　　　　Green's identity as the assailant was hotly disputed at trial because the victim was unable

to make an in-court identification of him.  (Rep.'s R.  v.  3 at 15.)  However, the victim testified

that he was able to identify his attacker in a photographic lineup shown to him by a Dallas police

detective.  (Rep.'s R.  v.  3 at 51-52.)  The detective who showed the victim the photographic

lineup, Detective Ermatinger, testified that the victim looked at each picture carefully, selected

Petitioner's photograph without hesitation and indicated that Petitioner was the person who

robbed him and cut his throat.  (Rep.'s R.  v.  3 at 104-05.)  The victim, in turn, signed and dated

the back of Green's picture.  (Rep.'s R.  v.  3 at 104-05.)  The photographic line-up was

introduced into evidence at the trial.  (Rep.'s R.  v.  3 at 106.)

　　　　Moreover, circumstantial evidence was introduced at trial linking Petitioner to the

robbery.  The victim testified that he initially let his attacker into his house early in the morning

of November 10, 2001, because he recognized the man.  (Rep.'s R.  v.  3 at 21-22.)  He further

testified that he recognized his attacker because the man had visited his house on two prior

---

jury may return a general verdict where alternate theories of committing the same offense were
submitted to the jury in the disjunctive if the evidence is sufficient to support a finding under any
of the theories submitted).

occasions with a woman named "Kimberly something,"and that "Kimberly" had introduced the man as her "brother." (Rep.'s R.  v.  3 at 14-16, 21-22, 56.)  A picture of "Kimberly" was admitted into evidence after the victim and Detective Ermatinger identified her.  (Rep.'s R.  v.  3 at 14-16, 95.)  Thereafter, Kim Stacey ("Stacey"), the woman identified by the victim as "Kimberly," testified that she knew both the victim and Green, that Green had previously visited the victim at his house, and that, when Green visited the victim's house, she introduced him to the victim as her "brother" so that the victim would not feel threatened by him.  (Rep.'s R.  v.  4 at 17.)  Stacey also testified that, in the presence of Petitioner, the victim gave her two hundred and fifty dollars, which the victim removed from his billfold.  (Rep.'s R.  v.  4 at 50.)  Additionally, Dennis Williams, a detective in the Dallas Police Department's crime scene response section for over fourteen years, testified that he retrieved two identifiable fingerprints from the interior side of the victim's glass storm dorm, and identified one of the prints as Petitioner's.  (Rep.'s R.  v.  3 at 130-35.)

Though Petitioner attacked the credibility of the witnesses through cross-examination, including the validity of the fingerprint evidence and the reliability of the victim's pre-trial photographic identification of Petitioner, a review of the entire record demonstrates that a rational jury could have accepted the testimony of all of the witnesses for the State and found that Petitioner was the person who committed the offense.  Therefore, Petitioner's claim that the evidence was insufficient to support the jury's verdict of guilty is without merit.

## Ineffective Assistance of Counsel

Green also asserts that he was denied the effective assistance of counsel at trial because his attorney, Phillip Wainscott ("Wainscott"), did not object to testimony regarding an allegedly impermissibly suggestive photo line-up conducted by a police officer investigating the robbery.

Wainscott did not object to testimony from either the victim or the detective regarding the pre-trial photographic line-up and did not request a hearing outside the presence of the jury to determine whether the pre-trial identification was reliable. He briefly took Detective Ermatinger on voir dire in order to determine the numbering sequence of the photographs. (Rep.'s R. v. 3. at 105-06.)

The trial court obtained an affidavit from Wainscott. *Ex parte Green*, Appl. No. 61,313-01 at 44-45.[6] The affidavit, which Wainscott apparently signed without reviewing the transcript from the August 2002 trial, inaccurately recounts the evidentiary sequence of events. The record shows that the victim witness testified prior to the time the photo spread, sponsored by Detective Ermatinger, was received into evidence.

An attorney's conduct is governed by the standards set out in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052 (1984). There is a strong presumption that an attorney's conduct falls within the broad range of reasonable professional assistance required under the Sixth Amendment. *Id*. at 690, 104 S. Ct. at 2066. To overcome this presumption a habeas petitioner must establish that: (1) the attorney's conduct was constitutionally deficient (causation) and (2) but for such unprofessional errors, the result probably would have been different (prejudice). *Id*. at 687, 694, 104 S. Ct. at 2064, 2068. Failure to prove either prong of the two-part test

---

[6] Wainscott submitted a letter response dated January 3, 2005, prior to submitting his affidavit executed on January 24, 2005. *See Ex parte Green*, Appl. No. 61,313-01 at 46-47.

forecloses relief.  *Id.* at 697, 104 S. Ct. at 2069.

The admission of unreliable identification testimony violates a defendant's due process rights.  *Manson v. Brathwaite*, 432 U.S. 98, 113, 97 S. Ct. 2243, 2252 (1977).  Therefore, when counsel does not object to the admission of such testimony, his  performance falls below professional norms.  The standard for determining whether the admission of identification testimony violates the due process rights of a defendant is one of "fairness," *id.*  at 113, 97 S. Ct. at 2252, and the primary evil to be avoided is "a very substantial likelihood of irreparable misidentification," *Simmons v. United States*, 390 U.S. 377, 384, 88 S. Ct. 967, 971 (1968).

In all of the reported cases which the court has found, the suggestive pre-trial identification issue has arisen in the context in which a witness has made an in-court identification of the defendant.  In the present case, as noted above, the victim was unable to identify Green as his assailant in the jury's presence, although it is equally clear that he positively identified Green from a photo spread as his assailant four days after the robbery.

There is nothing in the record which shows or suggests why the victim was unable to identify Green at trial.  However, the victim was 81 years old at the time of trial, which was held more than 9 months after the robbery occurred.  The record shows that he was hard of hearing, had some difficulty walking, and apparently used some type of breathing equipment at the time of trial.  (Rep.'s R.  v.  3 at 9-10, 25).

Notwithstanding the victim's inability to effect an in-court identification of Green, the state presented circumstantial evidence to establish that he committed the aggravated robbery.  *See* pages 8-9, *supra*.  Detective Ermatinger related that the individuals in the six photographs were all of the same race and had similar physical features.  (Rep.'s R.  v.  3 at 100-01; Rep.'s R.

11

v.  5 at 16 (State's Ex.  12)[7]).  On cross-examination he conceded that Green's hair color in his

photograph was remarkably lighter than the hair color of the other individuals in the spread.

(Rep.'s R.  v.  3 at 113.)

       The fact that Green's hair color was lighter than that of the other persons depicted in the

photo spread does not render the spread impermissibly suggestive.   There is no suggestion that

the assailant's hair color was a prominent characteristic noted by the 80 year old victim.  Indeed,

hair color and facial hair are characteristics which can be most easily altered.  Upon the

magistrate judge's review of Exhibit G, it is quite clear that any objection to admissibility of the

exhibit, State's Exhibit 12 at trial, on the grounds that it was impermissibly suggestive, would

have been futile.  The Sixth Amendment does not require that an attorney lodge futile objections.

*See Koch v.  Puckett*, 907 F.2d 524, 527 (5th Cir.  1990).  Therefore, Green cannot satisfy the

"cause" prong of the *Strickland* test.

       Moreover, assuming, *arguendo*, that the photo spread was impermissibly suggestive, that

fact does not end the court's inquiry.  *See*, *e.g.*, *Neil v.  Biggers*, 409 U.S. 188, 199-200, 93 S.

Ct.  375, 382 (1982) (noting that the "central question" in the case was "whether under the

'totality of the circumstances' the identification was reliable *even though the confrontation*

*procedure was suggestive*") (emphasis added).  In *Neil*, the Court identified factors to be

considered in addressing the "totality of the circumstances."  These factors include: "[1)]the

opportunity of the witness to view the criminal at the time of the crime, [2)] the witness' degree

of attention, [(3)] the accuracy of the witness' prior description of the criminal, [(4)] the level of

---

[7]  Color photos of the actual spread are found at Ex.  G to Green's § 2254 petition.

certainty demonstrated by the witness at the confrontation, and [(5)] the length of time between the crime and the confrontation." *Id.*

The victim testified regarding his interactions with "Kim's brother" before the attack and his opportunity to view his attacker during the attack.  While the victim gave conflicting testimony regarding the amount of time "Kim's brother" spent in his house on two occasions, it was evident that the victim spent sufficient time with the man to observe his facial features and other physical characteristics.  (Rep.'s R.  v.  3 at 16, 61.)  Additionally, the victim testified that he had a significant opportunity to view his attacker during the time of the attack.  The victim stated that he turned his porch light on when the attacker initially rang his door bell and turned on the lights in his home once he let the man into his home.  (Rep.'s R.  v.  3 at 20-22, 29.)  The victim also explained  that he had a short conversation with the man once he was granted access to the house, and that he came face to face with his attacker when he cut him with a box cutter or X-ACTO knife.   (Rep.'s R.  v.  3 at 29, 32-37.)

Likewise, Detective Ermatinger testified regarding the victim's prior description of his attacker, the time between the attack and the identification, and the level of certainty the victim demonstrated when making the photographic identification of Petitioner.  Detective Ermatinger testified that he spoke to the victim two days after the offense and that the victim told him that he recognized his attacker as a person who had been introduced to him by Stacey.  (Rep.'s R.  v.  3 at 97.)   The detective interviewed Stacey, who identified a man she knew as "Tommy" or "Barracuda" as the man she introduced to the victim and informed the detective that he worked at a nearby Ford dealership.  (Rep.'s R.  v.  3 at 97.)  Upon further investigation, Detective Ermatinger determined that "Tommy" was Thomas Eugene Green.  (Rep.'s R.  v.  3 at 98-100.)

Detective Ermatinger then obtained a photograph of Petitioner and placed it in a six-person photographic display.  (Rep.'s R.  v.  3 at 100.)

Detective Ermatinger went on to explain that, on November 14, four days after the incident, he showed the victim the photographic lineup outside of Ermatinger's office while the victim was sitting in the back seat of a parked car.  (Rep.'s R.  v.  3 at 102-05.)  Detective Ermatinger asked the victim "if he recognized anybody" and did not tell the victim that his assailant's photograph was in the lineup or that he had to pick one person out of the lineup. (Rep.'s R.  v.  3 at 103.)  According to Detective Ermatinger, the victim looked at each picture carefully, selected Petitioner's photograph without hesitation, and indicated that Petitioner was the person who robbed him and cut his throat.  (Rep.'s R.  v.  3 at 104-05.)  Therefore, even if the photo spread were determined to be impermissibly suggestive, in light of the "totality of the circumstances," no meritorious objection to the admissibility of the testimony or the spread itself could have been waived.

Notwithstanding the magistrate judge's opinion that the Texas courts did not err in denying relief on Green's ineffective assistance of counsel claim, it is clear that he cannot show that the Court of Criminal Appeals' decision was objectively unreasonable.  *See*, *e.g.*, *Yarborough*, 540 U.S. at 5, 124 S.  Ct.  at 4.

**RECOMMENDATION:**

For the foregoing reasons, Green has failed to demonstrate that the Court of Criminal Appeals' denial of his article 11.07 application was objectively unreasonable and therefore his petition should be denied.  *See* § 2254(d)(1)-(2).

A copy of this recommendation will be transmitted to counsel for Petitioner and Respondent.

Signed this 3rd day of March, 2006.

_____
Wm. F. Sanderson Jr.
United States Magistrate Judge

<u>NOTICE</u>

In the event that you wish to object to this recommendation, you are hereby notified that you must file your written objections within ten (10) days after being served with a copy of this recommendation.  Pursuant to *Douglass v. United Servs. Auto Ass'n,* 79 F.3d 1415 (5th Cir. 1996)(*en banc*), a party's failure to file written objections to these proposed findings of fact and conclusions of law within such ten (10) day period may bar a *de novo* determination by the district judge of any finding of fact and conclusion of law and shall bar such party, except upon grounds of plain error, from attacking on appeal the unobjected to proposed findings of fact and conclusions of law accepted by the district court.